IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POWER RESTORATION INTERNATIONAL, INC. *Plaintiff*, | : : : : | CIVIL ACTION |
| v. | : : | |
| PEPSICO, INC., et al. *Defendants*. | : : | NO. 12-1922 |

**MEMORANDUM**

PRATTER, J.                                                                                   OCTOBER 11, 2013

## I.    INTRODUCTION

Plaintiff, Power Restoration International, Inc. ("Power Restoration"), brings this action against Pepsico, Inc. ("Pepsico"), Bottling Group, LLC ("Bottling Group"), and Frito-Lay Trading Company (Europe), Gmbh ("Frito-Lay"), alleging breach of contract (Count I), unjust enrichment (Count II), *quantum meruit* (Count III), and account stated (Count IV). Presently before the Court is Defendants' motion to dismiss [Doc. No. 9] Plaintiff's Complaint pursuant to Rule 12(b)(6). For the reasons that follow, the Court denies Defendants' motion to dismiss with respect to Count I and II, but grants the motion with respect to Counts III and IV.[1]

---

[1] In addition to the motion to dismiss presently before the Court, the Defendants also moved for Rule 11 sanctions against Plaintiff and its counsel. On October 4, 2012, the Court denied Defendants' motion for sanctions [Doc. No. 10], without prejudice, because it was premature.

1

## II.     FACTUAL BACKGROUND[2]

Power Restoration designs and installs industrial and commercial electrical systems that allow customers to reduce electrical consumption. Compl. ¶ 2. Power Restoration alleges that Pepsico contacted Power Restoration in August 2010 for the purpose of developing Pepsico's "Global Power Optimization Program" (the "Program") – an audit and redesign of electrical power consumption at Pepsico's facilities at various locations around the world. *Id.* at ¶¶ 15, 18. Power Restoration asserts that, at that time, Pepsico and Power Restoration entered into an oral contract whereby Power Restoration would act as the engineering and management entity for the coordination of the Program. *Id.* Power Restoration alleges that from August 2010 through March 2011, its representatives worked with Pepsico senior management to develop and implement the Program. *Id.* at ¶ 16. Of particular import to the claim, Power Restoration asserts that on February 15, 2011, "Pepsico confirmed its retention of Power Restoration with the issuance of the following letter of intent:"

> This letter sets forth the intent of Pepsico, Inc. with regard to PRI Global Enterprises to procure, over the next 12 months, Power Quality Solutions to be installed at Pepsico facilities located in multiple countries. Pepsico intends to conduct at least 150 audits of these facilities. Pepsico anticipates most of these audits will deliver favorable ROI. Further, it is Pepsico's intent to issue 100 Orders to PRI Global Enterprises for design and installation during this period, with an average cost of $300,000 per installation.

*Id.* at ¶ 17. Power Restoration alleges that, as a preliminary step in implementing the Program, all three Defendants[3] also directed Power Restoration to perform energy audits at multiple facilities,

---

[2] The following summary is based on the allegations in Plaintiff's Complaint, which the Court assumes to be true for purposes of Defendants' motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

[3] Defendants Bottling Group and Frito-Lay are alleged to be controlled by, or wholly owned subsidiaries of, Pepsico. *Id.* at ¶¶ 6, 7.

for which Power Restoration would be compensated for labor, materials, equipment and other expenses. *Id.* at ¶ 18. Power Restoration alleges that it performed audits of Pepsico facilities in Iberia, Poland, and Turkey in February 2011, for which it billed Pepsico and Frito-Lay $101,267.00 on May 27, 2011. *Id.* at ¶ 19. [4]

Power Restoration also alleges that it entered into written purchase order contracts[5] with Bottling Group for the installation of power saving systems at facilities in Hayward, California and Stone Mountain, Georgia, and a written agreement (in the form of a proposal from Power Restoration and email accepting the proposal) for work at a facility in Mississauga, Canada. *Id.* at ¶¶ 20-21.[6] Power Restoration alleges that it performed the work required under the purchase orders, for which it billed Bottling Group $59,905.25 in an invoice dated November 1, 2011. *Id.* at ¶ 22.[7] Despite repeated demands for payment, Bottling Group has refused to pay Power Restoration the aggregate $161,172.25 due under the foregoing agreements. *Id.* at ¶ 25.

Finally, Power Restoration alleges that Pepsico wrongfully terminated its overall contract with Power Restoration to move forward with the Program on May 27, 2011, resulting in approximately $9 million in lost profits, lost reputation and business interruption, all allegedly suffered by Power Restoration. *Id.* at ¶ 24.

---

[4] The May 27, 2011 invoice is attached as Exhibit A to the Complaint.

[5] The purchase order agreements are collected as Exhibit B to the Complaint.

[6] The January 31, 2011 proposal and the email accepting the proposal make up Exhibit C to the Complaint.

[7] This invoice is Exhibit D to the Complaint.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citation omitted).

To survive a motion to dismiss, the Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011) (citation omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if

4

doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. The Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotations omitted), or a Plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d. Cir. 2008).

## IV. DISCUSSION[8]

### A. Breach of Contract

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. W*are v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003)(quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). The important inquiry is whether the parties "manifested an intention to be bound by [the

---

[8] Both parties appear to have assumed, without citing any authority or providing any analysis, that Pennsylvania law applies. Accordingly, the Court will also apply Pennsylvania law.

agreement's] terms and whether the terms are sufficiently definite to be specifically enforced." *ATACS Corp. v. Trans World Commc'ns.*, Inc., 155 F.3d 659, 665 (3d Cir.1998).

Defendants argue that Plaintiff's breach of contract claim with respect to its request for $9 million in lost profits must be dismissed because of a failure to allege the first and third elements for a breach of contract. Defs.' Mot. to Dismiss at 6. Defendants also argue that Power Restoration's breach of contract claim with respect to the $101,000 it alleges Frito-Lay owes it for services rendered for the European audits must be dismissed because Plaintiff fails to allege the first and second elements for a breach of contract claim. *Id.* The Court will address these arguments in turn.

As an initial matter, the argument that Plaintiff failed to allege a contract claim with respect to its request for $9 million in lost profits is premised upon Defendants' belief that Plaintiff seeks to enforce the February 15, 2011 letter of intent ("LOI"). That construct of the claim is in error. Power Restoration has clarified in its opposition brief that it is relying on an oral contract reached in August 2010, and is only using the LOI—along with other documents[9] and viewed in light of the course of conduct between the parties—as evidence of the terms the parties reached in the overall oral contract. Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 6. In their response brief, Defendants argue that "this theory was not alleged in the Complaint." Defs.' Reply at 14. Plaintiff, however, points the Court to paragraph 15 of the Complaint, which alleges that in August 2010, Pepsico contacted Power Restoration and entered into an oral contract with Power Restoration to act as the engineering/program management entity to

---

[9] While Power Restoration attached numerous documents to its motion in opposition, the Court can and will only consider the documents Plaintiff attached to its Complaint because "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997.)

coordinate the Global Power Optimization Program. Pl.'s Opp'n at 6.; Compl. ¶ 15. Accordingly, given the representation that Power Restoration seeks to enforce this referenced overall oral contract, and only uses the LOI as evidence of the existence of an oral contract and for the terms of the oral contract, the Court will proceed to address Defendants' motion to dismiss the breach of contract claim.

As explained above, Plaintiff explicitly pled in its Complaint that the parties entered into an oral contract where it was agreed that Power Restoration would coordinate and implement the Global Power Optimization Program. Plaintiff argues that at this stage in the proceedings the LOI, while not a contract itself, provides specific enough terms to support the pleading standard for a breach of contract claim. Specifically, the LOI states that over the course of 12 months Power Quality Solutions would be installed, Pepsico intended to conduct at least 150 audits, and Pepsico would issue 100 orders to PRI Global Enterprises[10] for design and installation. The LOI also provides that the average cost would be $300,000 per installation. Thus, Plaintiff has sufficiently alleged the first element of a breach of contract claim, to wit, the existence of a contract, including its essential terms.[11]

---

[10] In their brief, Defendants note that the LOI references PRI Global Enterprises and not the Plaintiff in this case, Power Restoration International, Inc. Defs.' Mot. to Dismiss at 9. At oral argument, Plaintiff explained that the LOI's misuse of the name PRI Global Enterprises instead of Power Restoration International, Inc. was a typographical error. Oral Argument at 13:19–14:17 (E.D. Pa. Oct. 4, 2012), ECF No. 21. While discovery may shed further light on this matter, in its Complaint, Power Restoration clearly alleges that the LOI confirmed Pepsico's retention of Power Restoration International, Inc. This fact, coupled with Power Restoration's explanation at oral argument that the different name in the LOI was a typographical error, allows Power Restoration at this stage of the proceedings to use the LOI as evidence of the oral contract's material terms.

[11] The Court is not persuaded by Defendants' argument that the terms in the LOI were too unspecific to be evidence of the overall contract between the parties. Specifically, Defendants point to the fact that Power Quality Solutions was undefined and the exact price terms for the

Finally, Defendants argue that Plaintiff can not support its $9 million lost profit claim because the only evidence that lost profits were reasonably foreseeable is the details of price and timeline provided in the LOI, and the LOI is not an enforceable contract. As detailed above, however, Plaintiff is not asserting that the LOI is a contract itself. Power Restoration uses the LOI as evidence of the terms—including price and the timeline of the project. And based on the terms of the LOI, Plaintiff has pleaded sufficient facts to give Defendants fair notice of its lost profits claim.[12] Therefore, Plaintiff has adequately alleged a breach of contract with respect to its $9 million lost profits claim.

Defendants' argument that Plaintiff's breach of contract claim against Frito-Lay for the European audits is similarly unpersuasive. Defendants incorrectly state that Power Restoration alleged in its Complaint that the invoice is the contract between the parties. However, Power Restoration uses the invoice as evidence of the contract, and instead alleges a separate agreement

---

goods were also unspecified. Although in its Complaint, Power Restoration has not provided the specific details of what constituted a Power Quality Solution, or the exact payment structure, at the motion to dismiss stage, Plaintiff's failure to provide more specific information does not require dismissal. As detailed above, Plaintiff has alleged sufficient information to plausibly show that an overall oral contract between the parties existed. During discovery, the Defendants can test their claim that no such contract existed and Plaintiff will have the opportunity to supplement the factual record if appropriate.

[12] Defendants cite to *Warfield Philadelphia L.P. v. Nat'l Passenger R.R. Corp.*, No 09-2001, 2009 WL 4043112, at *8 (E.D. Pa. Nov. 20, 2009), to support their argument that Power Restoration has not adequately alleged lost profits; however, the facts of *Warfield* are significantly different from this case. Specifically, *Warfield* involved a claim that Amtrak prevented the plaintiff from advertising its parking and shuttle services at 30th Street Station in Philadelphia. *Id.* at *2. Plaintiff then generally alleged that Amtrak's actions caused lost profits for the parking and shuttle service business. *Id.* at *8. In this case, Power Restoration specifically alleged that the parties had contracted for it to provide 150 audits and install 100 Power Quality Solutions; and, for its work, Power Restoration would be paid an average of $300,000 per installation. Additionally, Plaintiff attached invoices to its Complaint to show the amount it was paid for various audits and installations. Therefore, unlike in *Warfield*, Plaintiff has provided enough evidence at this junction to allow its claim of damages to go forward.

between the parties.[13] Specifically, Plaintiff provided it its Complaint that "Frito-Lay directed PRI to perform energy audits . . . at multiple domestic and internal Pepsico facilities." Compl. ¶ 18. "As part of this directive, [Power Restoration] was to be paid for labor, materials, equipment, subcontractor work, and expenses required to perform the audits." *Id.* Then Plaintiff alleged that "pursuant to directive, PRI performed audits at Pepsico facilities in Iberia, Poland and Turkey in February 2011," and charged Frito-Lay $101, 267. *Id*. at ¶19. Thus, Plaintiff has alleged a "meeting of the minds" as it asserted that Frito-Lay asked it to perform audits in return for specific costs, and Plaintiff later performed the work. Plaintiff also alleged a breach by claiming that Defendants refused to pay for the work, and showed damages as provided in the invoice attached to the Complaint. Plaintiff has sufficiently pleaded all elements for a breach of contract claim.[14]

In their briefing and at oral argument Defendants claimed that even if Plaintiff sufficiently pleaded breach of contract, its claim would still be barred by the statute of frauds because it alleged—and relied on in its briefing—an oral contract between the parties, but the essence of the contract was for a sale of goods. Defs.' Supplemental Mem. at 1.

It is too early in the litigation, however, to consider this argument. The statute of frauds is an affirmative defense. *See, e.g.*, *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997). On motions to dismiss, "an affirmative defense . . . is appropriately considered only if

---

[13] Plaintiff does not allege whether this agreement was part of the overall oral contract reached in August 2010, or a new contract. These facts, however, can be developed, and tested, during discovery.

[14] The case Defendants' cite to support its argument, *Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. Ct. 2006), is inapposite because it addressed an appeal from a motion for summary judgment—not a motion to dismiss—and turned on the Court's conclusion that the Plaintiff had provided no essential terms *after* a full discovery.

it presents an insuperable barrier to recovery by the plaintiff." *Id.* (Internal citations omitted). In *Flight Sys.*, the defendant argued it should not be bound by a five-year lease, agreed upon orally, because part of Pennsylvania's statute of frauds requires a written contract to document any lease of more than three years. *Id.*

The court rejected that argument and listed several reasons the statute of frauds did not foreclose the suit. *Id.* The court stated that the statute is a waivable defense, and as such would not bar recovery if the defendant failed to raise it in its answer. *Id.* Additionally, the defendant may admit a contract actually existed in further pleadings or testimony. *Id. See also ALA, Inc.*, 29 F.3d at 862 (listing numerous cases holding that motions to dismiss on the statute of frauds are improper because of the possibility of an admission). The court also noted that even if the defendant raised the statute of frauds in its answer, the plaintiffs may still be able to find a way to produce evidence to satisfy the statute. *Id.* at 128. Each of these reasons also applies here.

The Third Circuit Court of Appeals also cautioned that the statute of frauds is not meant "to arm contracting parties with a sword they may use to escape bargains they rue." *Flight Sys.*, 112 F.3d at 128. Dismissing a contract claim before a defendant even files its answer "would enable [a defendant] to use the statute of frauds as a sword, in contravention of the statute's purpose." *Id.* Because of these policy concerns, and because the pleadings in the case at hand do not obviously show Power Restoration has an "insuperable" obstacle to recovery, the Defendants' statute of frauds argument should not be considered at this stage of the litigation. Accordingly, Defendants' effort to dismiss Plaintiff's breach of contract claim contained in Count I will be denied.

B.    **Unjust Enrichment**

Plaintiff pleads as an alternative to its contract claim, an unjust enrichment claim for (1) the European audits, and (2) its claims against Bottling Group. To claim unjust enrichment, a plaintiff must prove: "(1) benefits conferred upon defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Sunlight Elec. Contracting Co., Inc. v. Turchi*, No. 08-5834, 2011 WL 4086077, at *16 (quoting *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007) (internal quotation marks omitted)). Defendants argue that Power Restoration's claim for unjust enrichment with respect to the European audits must be dismissed because it fails to sufficiently allege that the Plaintiff conferred a benefit upon the Defendants. Defs.' Mot. to Dismiss at 12.

The Complaint could have more clearly alleged a benefit to the Defendants. However, Plaintiff adequately stated sufficient facts to show that Defendant Frito Lay[15] received a benefit from the European audits. Specifically, in its Complaint, Plaintiff avers, "Pepsico decided to implement a companywide program . . . to better manage, control, and optimize, Pepsico's electrical power consumption at manufacturing, operational and maintenance facilities worldwide." Compl. ¶ 11. Power Restoration further explains that in order to implement the Program—which Plaintiff had described earlier as providing productivity and sustainability benefits—Pepsico needed Plaintiff to perform the European audits. Compl. ¶¶ 12, 18. In its Complaint Power Restoration stated that it performed the European audits, and, accordingly, it

---

[15] As explained in the fact section of this memorandum, Frito Lay is alleged to be controlled by or a wholly owned subsidiary of Pepsico.

can be inferred that Pepsico can now go forward with the Program as they see fit. Under the circumstances, Defendants' request for dismissal of this claim will be denied.

Defendants also argue that Power Restoration's unjust enrichment claim with respect to its $59,000 claim against Bottling Group must be dismissed because an express agreement between the parties exists with regards to that claim. "The quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969). "Nevertheless, a party may plead alternative theories of breach of contract and unjust enrichment when there is a dispute about the existence or validity of the contract in question." *Batoff v. Charbonneau*, No. 12-5397, 2013 WL 1124497, at *9 (E.D. Pa. Mar. 19, 2013) (citing *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp .2d 513, 527–528 (E.D. Pa. 2012)). In this case, while Defendants admit that there is an express agreement between the parties regarding the work Plaintiff performed for the Bottling Group, at this early stage of the proceeding it is unclear if Defendants will later contest the validity or enforceability of that express agreement. Accordingly, the Court will deny the defense motion to dismiss the claim for unjust enrichment with respect to the $59,000, recognizing that Defendants may present this argument at a later stage of the litigation if appropriate.

    **C.**    *Quantum meruit*

Defendants argue that *quantum meruit* is not a recognized cause of action but is an equitable remedy for unjust enrichment. Defendants are correct that some cases describe *quantum meruit* as a remedy. *See e.g., Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 998 (3d Cir. 1987) ("[q]uantum meruit is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment."). Others, however, explain that *quantum*

*meruit* and unjust enrichment are synonymous. *See Powers v. Lycoming Engines*, 328 F. App'x 121, 124–25 (3d Cir.2009) (("Unjust enrichment, rather, an equitable remedy and synonym for *quantum meruit*, is a form of restitution.") (Internal quotation marks and citation omitted.) Thus, even if Power Restoration's *quantum meruit* claim set forth in Count III is a cause of action as Plaintiff contends, it is duplicative of Plaintiff's claim for unjust enrichment in Count II. *See Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000) (dismissing a count because it is duplicative of another count). Accordingly, because amendment would be futile, Count III for *quantum meruit* will be dismissed with prejudice.

### D. Account Stated

Finally, Defendants contend that Power Restoration's account stated claim must be dismissed, because they have not accepted Power Restoration's account of the debt. "'An account stated is an account in writing, examined, and expressly or impliedly accepted by both parties thereto.' An allegation that a Defendant 'never contested its bills is not sufficient to show acquiescence in the correctness of the account.'" *Line Sys., Inc. v. Sprint Nextel Corp.*, No. 11-6527, 2012 WL 3024015 (E.D. Pa. July 24, 2012) (quoting *Braverman Kaskey, P.C. v. Toidze*, No. 09–3470, 2011 WL 4851069, at *4 (E.D. Pa. Oct.12, 2011) (internal quotations omitted)). In its Complaint, Power Restoration only alleges that "defendants did not object to or reject the amounts sought in the invoices issued." Compl. ¶ 51. Accordingly, the Court agrees that Plaintiff does not support its claim for account stated. Because Power Restoration may be able to amend its claim to adequately allege a claim for account stated, the Court will dismiss Count IV without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss with respect to Counts III (*quantum meruit*) and IV (account stated), but deny it with respect to Counts I (breach of contract) and II (unjust enrichment). An appropriate Order follows.