IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **POWER RESTORATION INTERNATIONAL, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**PEPSICO, INC., BOTTLING GROUP, LLC, and FRITO-LAY TRADING COMPANY (Europe), Gmbh,**<br><br>Defendants,<br><br>**GREGORY JENNINGS, GEORGE MAZZOLI, and OPTIPOWER SOLUTIONS LLC (f/k/a OPTISINE, LLC)**<br><br>Third-Party Defendants. | CIVIL ACTION NO. 12-1922 |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' OPPOSITION TO GREGORY JENNINGS' MOTION TO DISMISS THIRD PARTY COMPLAINT**

Dated: March 10, 2014

Troy S. Brown (I.D. No. 78085)
Laura E. Hughes (I.D. No. 310658)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001

*Attorneys for Defendants/Third-Party Plaintiffs PepsiCo, Inc., Bottling Group, LLC, and Frito-Lay Trading Company (Europe), Gmbh*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION & BACKGROUND ..................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. Defendants' Denial Of Liability To PRI Does Not Bar Their Claim For Contribution. ..........................................................................................................2

    B. Defendants Properly Pleaded All Claims. .............................................................4

        1. Defendants Properly Pleaded Fraudulent Inducement and Fraud. .............4

        2. Defendants Properly Pleaded Civil Conspiracy To Commit Fraud. ..........6

        3. Defendants Properly Pleaded Negligent Misrepresentation. ......................8

        4. Defendants Properly Pleaded Aiding And Abetting Breach Of Fiduciary Duty. .........................................................................................8

    C. The Statute Of Limitations Does Not Apply to Defendants' Contribution Claim And Does Not Bar Defendants' Remaining Claims. ...................................9

III. CONCLUSION .....................................................................................................................10

Defendants/Third-Party Plaintiffs PepsiCo, Inc. ("PepsiCo"), Bottling Group, LLC ("Bottling Group"), and Frito-Lay Trading Company (Europe), Gmbh ("Frito-Lay") (collectively, "Defendants") respectfully submit this Opposition to Third-Party Defendant Gregory Jennings' ("Jennings'") Motion to Dismiss Third Party Complaint (Doc. No. 52) ("Motion to Dismiss" or "MTD").

## I.   INTRODUCTION & BACKGROUND

Jennings' company, Power Restoration International, Inc. ("PRI" or "Plaintiff"), sued Defendants. Discovery and other case developments have revealed Jennings' involvement in a scheme by PRI to defraud Defendants, and accordingly, on December 20, 2013, Defendants filed a Third-Party Complaint (Doc. No. 42) ("TPC") that includes claims against Jennings personally.

Jennings started PRI with George Mazzoli, a Siemens employee, and others, to sell a purported energy-saving harmonics abatement system to Defendants through an inappropriate relationship with a rogue PepsiCo employee, Steven Bertz. TPC ¶ 17(a), Counterclaims ("CC") ¶¶ 8-12 (Doc. No. 39, attached to TPC as Ex. B). It is alleged in PRI's own Complaint that when this relationship soured, Mazzoli and Bertz formed their own company, cutting Jennings out of the deal to defraud Defendants. Amended Complaint ("AC") ¶¶ 29-34 (Doc. No. 38, attached to TPC as Ex. A). After this occurred, PRI filed suit against Defendants for their alleged failure to pay approximately $161,000 for PRI's energy audits and installation of the harmonics abatement system at Defendants' facilities; PRI also purports to seek an additional $9,000,000 in "lost profits." TPC ¶ 13(a), AC ¶¶ 38-39.

Discovery thus far has revealed the depth of Bertz's improper interest in PRI and the deceitful course of conduct that he, along with Jennings, engaged in to defraud Defendants. Defendants now have the knowledge and ability to assert their legal right to remedy these

1

violations—and are appropriately doing so.  Despite his central role in the scheme perpetrated on PepsiCo, Jennings seeks to extricate himself through a Motion to Dismiss that is wrong both on the facts as alleged and the law relevant to the analysis.  In sum, for the reasons set forth below, the Motion to Dismiss should be denied, as Defendants have brought legally proper claims against Jennings.

II.     ARGUMENT

   A.     **Defendants' Denial Of Liability To PRI Does Not Bar Their Claim For Contribution.**

Among the claims that Defendants assert against Jennings is a claim for contribution.  TPC, Count II.  Defendants allege that Jennings "contributed to any and all damages and injuries sustained by Plaintiff" on PRI's unjust enrichment, conversion, and misappropriation of trade secrets claims because "Jennings acted in his own self-interest in causing PRI to defraud Pepsi and breach its purchase orders with Bottling Group, which in turn caused Bottling Group to terminate those purchase orders, which ultimately resulted in Bottling Group paying Optisine LLC to remedy PRI's breaches." *Id.* ¶¶ 25-26.

Jennings argues that under the *Tugboat Indian* line of cases, the fact that Defendants deny that they themselves are tortfeasors is "fatal" to their contribution claim against Jennings.  MTD at 5 citing *Tugboat Indian Co. v. A/S Ivarans Rederi*, 5 A.2d 153 (Pa. 1939).  Jennings is wrong.  *Tugboat Indian* does not stand for this proposition and is inapposite.  In *Tugboat Indian*, the Supreme Court of Pennsylvania held that "to recover indemnity where there has been such a voluntary payment, . . . it must appear that the party paying was himself legally liable and could have been compelled to satisfy the claim." *Tugboat Indian*, 5 A.2d at 156; *accord Neville Chem. Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1222 (3d Cir. 1970) and *Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 317 (3d Cir. 1985) (quoting same).  Accordingly, *Tugboat Indian*

2

applies to bar indemnity suits *after* there has been a settlement and the paying party is unable to demonstrate that he or she was legally liable and could have been compelled to satisfy the original claim. *Neville Chem.*, 422 F.2d at 1222-23 ("Under the rule of . . . *Tugboat Indian Company*, a plaintiff which pays claims asserted against it can recover only those sums for which it would be legally liable, not those sums it pays because it believes it is necessary to do so for business, no matter how reasonable the surrounding circumstances.") (footnote omitted).[1]

Here, Defendants have not brought an indemnity claim against Jennings after settling with PRI. Instead, Defendants bring a contribution claim on the theory that, *if* they are found liable for PRI's losses in the future, *then* Jennings is liable to Defendants for some (or all) of these losses as a joint tortfeasor. The fact that Defendants deny liability to PRI does not preclude their claim for contribution. Any other result would be contrary to the very concept of pleading in the alternative in general, and in particular Rule 8(d), which expressly allows a party to "state as many separate claims or defenses as it has, *regardless of consistency*," and Rule 14(a) which allows a defendant to serve a "complaint on a nonparty who is *or may be* liable to it for all or part of the claim against it." Fed. R. Civ. P. 8(d)(3), 14(a)(1) (emphasis added).

Accordingly, there is no legal basis to dismiss Defendants' claim for contribution against Jennings at this time and Jennings' Motion to Dismiss should be denied. *See Harmelin v. Man Fin., Inc.*, No. 06-cv-1944, 2007 WL 1521563, at *2 (E.D. Pa. May 23, 2007) ("[T]he Court cannot say before discovery has been fully completed, expert reports filed, dispositive motions

---

[1] Indeed, none of the "*Tugboat Indian* line of cases" that Jennings relies on to support his claim that "denials [in an answer] are fatal to contribution claims" involved contribution claims or denials in related proceedings. MTD at 5 citing *United Nat'l Ins. Co. v. Aon Ltd.*, No. 04-539, 2008 WL 3819865, at *6-7 (E.D. Pa. Aug. 8, 2008) (court refused to look at the arbitration record in previous proceeding in a subsequent action involving the same insurance company); *Pziepoira v. Long*, 12 A.2d 904, 904 (Pa. 1940) (finding that a debtor was not entitled to restitution of an alleged overpayment of a debt induced by the threat of legal action); *PPG Indus. v. Cent. Indus. Maint., Inc.*, No. 05-cv-1193, 2006 WL 752982, at *3 (W.D. Pa. Mar. 22, 2006) (determining whether Virginia or Pennsylvania choice of law applied in an indemnification action).

ruled upon, let alone any testimony taken at trial, that there is no set of facts under which [the defendant/third-party plaintiff] would be entitled to indemnity and/or contribution.").

### B. Defendants Properly Pleaded All Claims.

Jennings acknowledges that for purposes of his Motion to Dismiss, "the Court may look only to the facts alleged in the complaint *and its attachments*," MTD at 2 (citation omitted, emphasis added), yet he completely ignores the factual allegations Defendants assert in their Counterclaims attached to the Third-Party Complaint. *See* TPC ¶ 14 ("Defendants refer to and incorporate by reference, the allegations as set forth in their Counterclaims" attached as Exhibit B to the Third-Party Complaint). Consideration of the factual allegations in the Counterclaims reveals that Defendants properly pleaded all claims against Jennings and that his Motion to Dismiss should be denied.

#### 1. Defendants Properly Pleaded Fraudulent Inducement and Fraud.

With respect to Defendants' fraudulent inducement and fraud claims, Jennings argues that Defendants have not set forth sufficient facts to support the allegation that Jennings made misrepresentations to and omitted material factual information in discussions with Defendants regarding PRI's size and capabilities, and Mazzoli's and Bertz's affiliations with PRI. *See* MTD at 5-7. Jennings ignores the particularized allegation that "at a conference hosted by Siemens in Germany on October 13, 2010, Jennings told PepsiCo representatives, including Gerry Ainscough, that PRI was a large company that had experience in performing electrical audits and installing harmonics abatement systems on a large-scale." CC ¶ 17. As Defendants explain, "[t]his representation was false, as PRI was a small, newly formed company with no experience performing electrical audits or installing harmonics abatement systems." *Id*. ¶ 18.

With respect to Jennings' omissions regarding Bertz's and Mazzoli's improper affiliations with PRI, Defendants sufficiently allege that Mazzoli was a founder and owner of

4

PRI and that Bertz was an "advisory counselor" to PRI who was given a share of PRI's profits, CC ¶¶ 7, 12-14, and that Jennings failed to disclose this information in discussions with Defendants.  TPC ¶ 17(a), CC ¶ 15.  Jennings also argues, without legal support, that "as Bertz was Defendants' employee, the Defendants could not have justifiably relied on any misrepresentations about a relationship with Bertz because the Defendants and Bertz were one in the same."  MTD at 6.  Jennings is wrong.  Although Bertz was a PepsiCo employee, knowledge of his affiliation with PRI cannot be imputed to PepsiCo because Bertz is alleged to have been acting in his own self-interest to the detriment of PepsiCo.  *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 495 (3d Cir. 2013) ("where an agent acts in his own interest, and to the corporation's detriment, imputation [of the agent's knowledge to the corporation] generally will not apply") (citation omitted).

Jennings also asserts that "Defendants have not set forth any facts to show that the Defendants were damaged by these alleged misrepresentations" or that "these damages were proximately caused by the alleged misrepresentation of Plaintiffs."  MTD at 6.  However, Defendants alleged that they entered into certain commercial relationships with PRI based on these misrepresentations, paid PRI $187,695 for substandard work, and ultimately "had to hire another company at a substantial cost to fix PRI's substandard installation."  CC ¶¶ 27, 28, TPC ¶17(a).  Defendants have clearly alleged that they were proximately damaged by Jennings' conduct.

Accordingly, Jennings' challenges to Defendants' claims for fraudulent inducement and fraud fail and Jennings' Motion to Dismiss should be denied.

**2.     Defendants Properly Pleaded Civil Conspiracy To Commit Fraud.**

Jennings argues that Defendants have failed to adequately plead the elements of conspiracy to commit fraud.  *See* MTD at 7-8.  For a conspiracy claim to survive a motion to dismiss, a complaint need only "describe the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy." *Jairett v. First Montauk Sec. Corp.*, 203 F.R.D. 181, 187-88 (E.D. Pa. 2001) (citation omitted).  Defendants have alleged that Jennings entered into a deceitful scheme with Mazzoli and Bertz to defraud Defendants for their own benefit.  TPC ¶ 17(a), CC ¶¶ 7, 11-18.  Defendants have also alleged overt acts in furtherance of this scheme—namely that Jennings made misrepresentations to induce Defendants to enter into a relationship with PRI.  TPC ¶ 17(a), CC ¶¶ 14-18.  These allegations are sufficient to state a claim for conspiracy.  *See, e.g.*, *Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs.*, No. 08-2926, 2010 WL 2470992, at *5 (E.D. Pa. June 14, 2010) (allegations that defendants "entered into an illicit scheme" to defraud plaintiff and made misrepresentations to plaintiff in furtherance of scheme stated claim for conspiracy to defraud); *Flamm v. Sarner & Assocs., P.C.*, No. 02-4302, 2002 WL 31618443, at *8 (E.D. Pa. Nov. 6, 2002) (allegations that defendants conspired to compel improper payment in a manner that violated the law stated a claim for conspiracy).

Jennings also claims that Defendants fail to adequately plead the additional element of malice necessary to state a civil conspiracy claim.  *See* MTD at 8.  Jennings relies upon *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979), and its progeny, for the proposition that, where the plaintiff alleges a defendant acted in whole or in part to advance his own business interests, he has failed to plead the malice or intent required to state a civil conspiracy claim.  *See* MTD at 8.  In *RDK Truck Sales and Service, Inc. v. Mack Trucks, Inc.*,

Senior Judge Buckwalter rejected the very same argument in the context of a motion for summary judgment on a civil conspiracy claim, finding "the fact that an action advances one's business interest is *not* sufficient to warrant summary dismissal," and held that the plaintiff had sufficiently alleged malice:

> [Plaintiff] is not alleging that the legitimate business actions of [Defendants] form the basis of its civil conspiracy claim. Instead, it is the improper actions of [Defendants] that—while economically beneficial to them—form the basis of [Plaintiff's] civil conspiracy claim. [Plaintiff] alleges that [Defendants] conspired to use Clean Earth/EZ Pack as pass-throughs by which Worldwide improperly obtained sales assistance. This allegation, and the evidence supporting it, could lead a reasonable fact-finder to infer that [Plaintiff's] injuries were not simply an incidental side-effect of otherwise legitimate business interests, but rather the fruits of an unlawful conspiracy. These alleged actions are not equally "consistent with innocence." At this stage [Plaintiff] alleges malice sufficient to survive summary judgment.

No. 04-4007, 2009 WL 1441578, at *32-33 (E.D. Pa. May 19, 2009) (internal citation omitted, emphasis added); *accord Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 411-12 (W.D. Pa. 2002) (denying dismissal of conspiracy claim because the alleged actions, while economically beneficial, were unlawful and thus supported an inference of malice).

As in *RDK Truck* and *Daniel Boone*, Defendants here have properly alleged malice. In the Third-Party Complaint, Defendants allege that Jennings and his co-conspirators engaged in an unlawful conspiracy to fraudulently induce Defendants to enter into a relationship with PRI, TPC ¶ 17(a), CC ¶¶ 14-18, and from this it can be inferred that Defendants' damages were "not simply an accidental side-effect of [PRI's] otherwise legitimate business interests." *Daniel Boone*, 187 F. Supp. 2d at 412. "At this stage, [Defendants] adequately allege[] malice, and that allegation is sufficient to state a claim against [Jennings] for civil conspiracy." *Id*. Accordingly, Jennings' Motion to Dismiss should be denied.

7

### 3. Defendants Properly Pleaded Negligent Misrepresentation.

Jennings moves to dismiss Defendants' negligent misrepresentation claim on the bases that Defendants have not adequately alleged that Jennings made misrepresentations regarding Mazzoli's and Bertz's affiliations with PRI and PRI's size and capabilities, and have not stated how and to what extent they were damaged by these alleged misrepresentations. As described in detail above, Defendants have sufficiently alleged Jennings' misrepresentations and omissions and the damages they suffered as a result thereof. *See* § II(B)(1), *supra*. Jennings also challenges Defendants' negligent misrepresentation on the basis that "Defendants have not set forth any factual allegations which relate to Jennings' intent to induce [Defendants to act on his misrepresentations]." MTD at 9. To the contrary, Defendants allege that Jennings made the misrepresentations and omissions described above with the intent that Defendants would enter into a commercial relationship with PRI. TPC ¶ 17(a). In sum, Defendants have plainly stated a claim for negligent misrepresentation and the Court should deny Jennings' Motion to Dismiss.

### 4. Defendants Properly Pleaded Aiding And Abetting Breach Of Fiduciary Duty.

Jennings asserts that "Defendants have not set forth any factual support for the allegation that . . . Jennings had knowledge of the alleged breach" of fiduciary duty by Bertz, and as such have failed to set forth the requisite elements for a claim of aiding and abetting breach of fiduciary duty. MTD at 9. To the contrary, Defendants allege that Bertz was an advisory counselor to PRI and shared in the company's profits which "presented a clear conflict of interest with . . . respect[] [to his] position[] at PepsiCo," of which Jennings, the President of PRI, was well aware. TPC ¶ 4; CC ¶¶ 13-14. These allegations are more than sufficient to establish that Jennings had knowledge of Bertz's breach of fiduciary duty. *See Matlack Leasing, LLC v. Morison Cogen, LLP*, No. 09-1570, 2010 WL 114883, at *11 (E.D. Pa. Jan. 13, 2010) (sufficient

8

knowledge of breach of fiduciary alleged where the complaint alleged defendants had knowledge of breaching party's accounting generally and stated that defendants were "willfully blind").

### C. The Statute Of Limitations Does Not Apply to Defendants' Contribution Claim And Does Not Bar Defendants' Remaining Claims.

Jennings incorrectly asserts that each of Defendants' claims against him is governed by the two year statute of limitations set forth in 42 Pa. C.S. § 5524 and must be dismissed because "[t]he alleged misrepresentations which led to the [claims] all occurred over 2 years since the filing of Defendants' Third Party Complaint."  MTD at 10.  Defendants' claims against Jennings are timely and should not be dismissed.

As an initial matter, Defendants' contribution claim is not barred because statutes of limitations do not bar the joinder of a third-party defendant for contribution, since such claim does not accrue until judgment is entered against the defendant on the original claim.  *See Robichaw v. Horizon House, Inc.*, No. 07-3968, 2008 WL 2152249, at *2 (E.D. Pa. May 22, 2008) (collecting cases).  Judgment has not yet been entered on PRI's original claims so Defendants' contribution claim is timely.

While Defendants' remaining claims would typically be subject to a two-year statute of limitations, Defendants' claims are timely because the statute of limitations was tolled during the time period Jennings purposefully hid the scheme to deceive Defendants; and the clock did not begin to run until Defendants had a reasonable opportunity to discover this scheme, which opportunity did not arise until discovery commenced in this action and Defendants received documents from PRI and others.  *See Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 147 (3d Cir. 1997) (under Pennsylvania law, "when the underlying claim sounds in fraud, the statute of limitations is tolled by the tortious conduct, without any further action by the wrongdoer, until the fraud should have been discovered by the plaintiffs"); *Sheet Metal Workers, Local 19 v. 2300*

*Grp., Inc.*, 949 F.2d 1274, 1280-82 (3d Cir. 1991) (explaining Pennsylvania's inherent fraud doctrine, the doctrine of fraudulent concealment, and the discovery rule).  Moreover, even if this Court were to conclude that there is a question as to when Defendants had a reasonable opportunity to discover Jennings' wrongdoing, it would be premature at the motion to dismiss stage to make this determination.  *See Bral Corp. v. Johnstown Am. Corp.*, No. 3:08-232, 2011 WL 7037122, at *4-5 (W.D. Pa. Dec. 7, 2011) (collecting cases for the proposition that "[c]ourts, however, are reluctant to grant motions to dismiss on [statute of limitations grounds] where the discovery rule applies and it is not readily apparent when a party had a reasonable opportunity to discover that a wrong had been committed").

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Jennings' Motion to Dismiss.

Respectfully submitted,

Dated:  March 10, 2014          By:  /s/ Troy S. Brown
                                    Troy S. Brown (I.D. No. 78085)
                                    Laura E. Hughes (I.D. No. 310658)
                                    MORGAN, LEWIS & BOCKIUS LLP
                                    1701 Market Street
                                    Philadelphia, PA 19103
                                    Telephone: 215.963.5000
                                    Facsimile: 215.963.5001

                                    *Attorneys for Defendants/Third-Party Plaintiffs PepsiCo, Inc., Bottling Group, LLC, and Frito-Lay Trading Company (Europe), Gmbh*

## **CERTIFICATE OF SERVICE**

I, Laura E. Hughes, attorney for Defendants/Third-Party Plaintiffs PepsiCo, Inc., Bottling Group, LLC and Frito-Lay Trading Company (Europe), Gmbh, hereby certify that on this date I caused a copy of the foregoing Defendants/Third-Party Plaintiffs' Opposition to Gregory Jennings' Motion To Dismiss Third Party Complaint to be served on the following by electronic mail:

>Kevin B. Watson, Esq.
>Cipriani & Werner, P.C.
>450 Sentry Parkway, Suite 200
>Blue Bell, PA 19422
>kwatson@c-wlaw.com
>
>*Attorney for Third-Party Defendant Gregory Jennings and Plaintiff/Third-Party Defendant Power Restoration International, Inc.*
>
>
>Joseph J. Dougherty, Esq.
>6 Ponds Edge Drive, Suite 1
>Chadds Ford, PA 19317
>JDougherty@lyonsdougherty.com
>
>*Attorney for Third-Party Defendants George Mazzoli and OptiPower Solutions LLC (f/k/a Optisine LLC)*

Dated: March 10, 2014          */s/ Laura E. Hughes*
                                              Laura E. Hughes