IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **POWER RESTORATION** | : | |
| **INTERNATIONAL, INC.** | : | CIVIL ACTION |
|     *Plaintiff*, | : | |
| | : | |
|     v. | : | |
| | : | |
| **PEPSICO, INC., et al.** | : | NO. 12-1922 |
|     *Defendants/ Third Party Plaintiffs,* | : | |
| | : | |
|     v. | : | |
| | : | |
| **GREGORY JENNINGS, et al.** | : | |
|     *Third Party Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                                             APRIL 29, 2014

### I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Power Restoration International, Inc. ("Power Restoration") sued Pepsico, Inc. ("Pepsico"), Bottling Group, LLC ("Bottling Group"), and Frito-Lay Trading Company (Europe), Gmbh ("Frito-Lay") (collectively, the "PepsiCo Parties"), based on a business relationship that had gone sour. The PepsiCo Parties moved to dismiss Power Restoration's Complaint, and the Court granted the motion in part and denied it in part (Doc. No. 35).

Following subsequent discovery, the PepsiCo Parties brought counterclaims against Power Restoration. (Doc. No. 39.) The PepsiCo Parties alleged that discovery and other case developments revealed that Gregory Jennings, President of Power Restoration, was involved in a

---

[1]    The following summary is based on the allegations in the PepsiCo Parties' Third Party Complaint and Counterclaims, which the Court assumes to be true for purposes of the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

1

scheme to defraud the PepsiCo Parties, and accordingly, on December 20, 2013, the PepsiCo Parties filed a Third Party Complaint (Doc. No. 42) against Mr. Jennings.[2]

The PepsiCo Parties allege that Mr. Jennings, John Cairo, Robert Fabrizio, and George Mazzoli, a Siemens employee, (collectively "the Power Restoration Founders") formed Power Restoration in August of 2010, specifically in anticipation of harmonic abatement work to be performed for PepsiCo, through Siemens. The PepsiCo Parties allege that the Power Restoration Founders ensured that Power Restoration would be selected as the contractor to implement the harmonic abatement work through an inappropriate relationship with a "rogue" PepsiCo employee, Steven Bertz. The PepsiCo Parties allege that Power Restoration made Mr. Bertz "advisory counsel" to Power Restoration and identified him to potentially share in the company's profits.

The PepsiCo Parties state that they were unaware of the inappropriate relationship between Power Restoration and their employee Mr. Bertz. Additionally, the PepsiCo Parties allege that Mr. Jennings misrepresented to them that Power Restoration was a large and experienced company. Accordingly, the PepsiCo Parties arranged for Power Restoration to audit certain of their facilities. And, if following the audits the PepsiCo Parties decided to purchase Siemens' harmonic abatement system, they would hire Power Restoration as the contractor to install the system. Power Restoration completed audits for the PepsiCo Parties and installed the harmonic abatement system in a few of the PepsiCo Parties' plants. The PepsiCo Parties claim that Power Restoration's work was substandard, and, thus, they ended the relationship. The

---

[2] In their Third Party Complaint, the PepsiCo Parties also brought claims against George Mazzoli, the Chief Executive Officer of OptiPower Solutions LLC, and against OptiPower Solutions LLC ("OptiPower"). However, both Mr. Mazzoli and OptiPower have answered the Complaint and thus are not parties to this Motion.

PepsiCo Parties contend that at this point Mr. Mazzoli and Mr. Bertz formed their own company without Mr. Jennings.

Based on the above-alleged conduct, the PepsiCo Parties filed the Third Party Complaint against Mr. Jennings for contribution (Count II), fraudulent inducement (Count III), fraud (Count IV), conspiracy to commit fraud (Count V), negligent misrepresentation (Count VI), and aiding and abetting breach of fiduciary duty (Count VII). Mr. Jennings moved to dismiss the Complaint for failure to state a claim. For the following reasons, the Court concludes that Mr. Jennings's Motion is premature and the Court will deny the Motion.

## II.     LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted).  Thus, assessment of the sufficiency of a complaint is "a

3

context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the court adheres to certain well-recognized parameters. For one, the court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an

amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

### III. DISCUSSION

#### A. Statute of Limitations

Mr. Jennings asserts that each of the PepsiCo Parties' claims against him are barred by the applicable statute of limitations because all of the alleged acts occurred more than two years before the filing of the Third Party Complaint. The PepsiCo Parties contend that their claims are timely because of the discovery rule, the inherent fraud doctrine, and the fraudulent concealment doctrine. The PepsiCo Parties explain that the "statute of limitations was tolled during the time period Jennings purposefully hid the scheme to deceive [them]; and the clock did not begin to run until the [PepsiCo Parties] had a reasonable opportunity to discover this scheme, which opportunity did not arise until discovery commenced in this action." PepsiCo Br. 9. Additionally, the PepsiCo Parties claim that at the motion to dismiss stage, it is inappropriate for the Court to resolve this disputed issue of fact of when the PepsiCo Parties had a reasonable opportunity to discover they had been harmed by Mr. Jennings.

A statute of limitations defense can be used in the context of a Rule 12(b)(6) motion to dismiss only where "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385, n. 2 (3d Cir. 1994). Additionally, courts are "reluctant to grant motions to dismiss on this basis where the discovery rule applies and it is not readily apparent when a party had a reasonable opportunity to discover that a wrong had been committed against him or her." *Bral Corp. v. Johnstown Am. Corp.*, No. 08-232, 2011 WL 7037122, *5 (W.D. Pa. Dec. 7, 2011). *See also DIRECTV, Inc. v. Rodkey*, 369 F.Supp. 2d 587, 600 (W.D. Pa.

2005) ("[W]hen the Plaintiff first had a reasonable opportunity to discover the Defendant's violation of 18 U.S.C. §§ 2511(a), (c), and (d), presents a genuine issue of material fact which cannot be determined by the Court on the Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment."). Accordingly, because the PepsiCo Parties allege that they were unaware of Mr. Jennings's wrongful actions until discovery in this case brought it to light, it is not clear on the face of the Third Party Complaint that the PepsiCo Parties' claims against Mr. Jennings are barred by the statute of limitations.[3]

### B. Fraudulent Inducement, Fraud, and Negligent Misrepresentation

Mr. Jennings argues that the PepsiCo Parties' claims for fraudulent inducement, fraud, and negligent misrepresentation fail as a matter of law because the Third Party Complaint fails to sufficiently allege the elements required for each claim. However, as the PepsiCo Parties point out, while the body of the Third Party Complaint may lack factual specificity, the Third Party Complaint incorporated the factual allegations contained in the PepsiCo Parties' Counterclaims attached to the Third Party Complaint. *See* Third Party Complaint ("TPC") ¶ 9 ("The [PepsiCo Parties] refer to and incorporate by reference, the allegations as set forth in their Counterclaims" attached as Exhibit B to the Third Party Complaint.) And, as will be explained in greater detail below, consideration of the factual allegations in the Counterclaims shows that the PepsiCo Parties properly pleaded their claims for fraudulent inducement (Count III), fraud (Count IV), and negligent misrepresentation (Count VI).

---

[3] Additionally, the PepsiCo Parties' claim for contribution is not barred because "[t]he statute of limitations will not bar the joinder of a third-party defendant for contribution and indemnity, since such a claim does not accrue until judgment is entered against the defendant on the original claim." *Robichaw v. Horizon House, Inc.*, No. 07-3968, 2008 WL 2152249, *2 (E.D. Pa. May 22, 2008).

Under Pennsylvania law in order to sufficiently plead a cause of action for fraud and fraudulent inducement a party must set for the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010). Additionally, "pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.' " *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* To establish a cause of action for negligent misrepresentation, a party must prove: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 556 Pa. 489, 500, 729 A.2d 555, 561 (1999).

The PepsiCo Parties properly set forth the elements of fraudulent inducement, fraud, and negligent misrepresentation. They alleged that "at a conference hosted by Siemens in Germany on October 13, 2010, Jennings told PepsiCo representatives, including Gerry Ainscough, that [Power Restoration] was a large company that had experience in performing electrical audits and installing harmonics abatement systems on a large scale." Counterclaims ¶ 17. The PepsiCo Parties explain that "this representation was false, as [Power Restoration] was a small newly

formed company with no experience performing electrical audits or installing harmonics abatement systems." *Id.* ¶ 18. Additionally, the PepsiCo Parties assert that Mr. Jennings made the material misrepresentation with the intent for the PepsiCo Parties to rely on it and that the PepsiCo Parties did it fact rely on the misrepresentation when they entered into purchase orders with Power Restoration. TPC ¶¶ 29-30. Additionally, the PepsiCo Parties asserted that they were injured by the misrepresentation because they paid Power Restoration $187,695 for substandard work, and ultimately "had to hire another company at a substantial cost to fix [Power Restoration's] substandard installation." Counterclaims ¶¶ 27, 28; TPC ¶17(a). Accordingly, the PepsiCo Parties have sufficiently stated claims against Mr. Jennings for fraudulent inducement, fraud, and negligent misrepresentation.

### C. Aiding and Abetting Breach of Fiduciary Duty

Mr. Jennings contends that the PepsiCo Parties have failed to set forth the requisite elements for a claim of aiding and abetting a breach of a fiduciary duty. The elements of aiding and abetting breach of fiduciary duty under Pennsylvania law are: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and, (3) substantial assistance or encouragement by the aider and abettor in effecting that breach. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 417-18 (E.D. Pa. 2006). Mr. Jennings argues that the PepsiCo Parties have not set forth a factual allegation that he knew of Mr. Bertz's alleged breach, and, thus, have failed to establish a claim. However, the PepsiCo Parties alleged that Power Restoration (of which Mr. Jennings was President), made Mr. Bertz "advisory counsel" to Power Restoration and identified him to potentially share in the profits of the company. Additionally, the PepsiCo Parties assert that "the involvement of Steve Bertz . . . in [Power Restoration] presented a clear conflict of interest with [his][]position[] at PepsiCo . . . of which

Jennings . . . [was] well aware." Counterclaims ¶¶ 13-14. Thus, the PepsiCo Parties have adequately alleged that Mr. Jennings was aware of Mr. Bertz breach of fiduciary duty to PepsiCo and Mr. Jennings motion to dismiss as to this claim will be denied.

### D. Contribution

Mr. Jennings contends that the PepsiCo Parties' claim for contribution under the Pennsylvania Uniform Contribution Amount Joint Tortfeasors Act, 42 Pa. C.S.A § 8324 fails as a matter of law under *Tugboat Indian Co. v. A/S Ivarans Rederi*, 5 A.2d 153 (Pa. 1939). Specifically, Mr. Jennings argues that because "[the PepsiCo Parties] have denied in their Answer that they are tortfeasors," and "such denials are fatal to contribution claims." Jennings's Br. 5. Mr. Jennings cites to *Tugboat Indian Co. v. A/S Ivarans Rederi*, to support his argument. 5 A.2d 153 (Pa. 1939). However, *Tugboat Indian* is inapposite because it simply holds that "to recover indemnity where there has been such a voluntary payment . . . it must appear that the party paying was himself legally liable and could have been compelled to satisfy the claim." Unlike *Tugboat Indian*, the PepsiCo Parties have not brought an indemnity claim *after* settling with Power Restoration, and instead are simply bringing a contribution claim in case they are found guilty by a jury. Thus, *Tugboat Indian* does not preclude this claim. It is simply appropriate legal practice to bring a contribution claim in the alternative in case the PepsiCo Parties are later found to be liable to Power Restoration. Accordingly, Mr. Jennings's request that the Court dismiss the contribution claim will also be denied.

### E. Civil Conspiracy to Commit Fraud

Mr. Jennings asserts that the PepsiCo Parties have failed to state a claim for civil conspiracy to commit fraud. "To survive a motion to dismiss the conspiracy claim, the [] complaint need only 'describe the general composition of the conspiracy, some or all of its broad

objectives, and defendant's role in that conspiracy.'" *Forcine Concrete & Const. Co., Inc. v. Manning Equip. Sales & Servs.*, No 08-2926, 2010 WL 2470992, *5 (E.D. Pa. June 14, 2010) (quoting *Jairett v. First Montauk Sec. Corp.*, 203 F.R.D. 181, 187-88 (E.D. Pa. 2001). The PepsiCo Parties have sufficiently alleged that Mr. Jennings, along with Mr. Mazzoli and Mr. Bertz, formed Power Restoration with the intent to defraud the PepsiCo Parties by inducing them to enter into purchase orders with the Power Restoration. TPC ¶¶ 17. Additionally, as detailed above, Defendants alleged that Mr. Jennings committed overt acts in furtherance of the conspiracy by misstating Power Restoration's size and experience. Counterclaims ¶¶ 17-18. Thus, the only issue is whether the PepsiCo Parties have adequately alleged malice.

"Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy. Malice requires . . . that the sole purpose of the conspiracy was to injure the plaintiff, and that this intent was without justification." *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4205476, *36-37 (E.D. Pa. Sept. 19, 2012) (internal quotation marks and citations omitted) (citing *Doltz v. Harris & Assoc.*, 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003). Mr. Jennings contends that the PepsiCo Parties cannot establish the intent to injure element of their conspiracy claim because the conspiracy advanced the business interests of the parties to the conspiracy. However, in *RDK Truck Sales & Serv. Inc. v. Mack Trucks, Inc.*, the district court explained "the fact that an action advances one's business interest is not sufficient to warrant summary dismissal." *RDK Truck Sales & Serv. Inc. v. Mack Trucks, Inc.*, No. 04-4007, 2009 WL 1441578, *32 (E.D. Pa. May 19, 2009). The Court in *RDK Truck Sales* explained that when improper actions form the basis for the civil conspiracy claim, then the injured party can adequately allege an intent to injure even if the conspirators also monetarily benefited from the conspiracy. *Id. See also Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 412 (W.D. Pa. 2002) (holding

that because the "injuries [from the conspiracy] were not simply an accidental side-effect of [the conspirators'] otherwise legitimate business interests" the injured party had adequately alleged an intent to injure.) In this case, the PepsiCo Parties have alleged that the underlying conduct of the conspiracy was Mr. Jennings's and his co-conspirators' wrongful actions of fraudulently inducing them to enter into a harmful business relationship based on misrepresentations. Thus, because the PepsiCo Parties' injuries "were not simply an accidental side-effect of Mr. Jennings's otherwise legitimate business interests," the PepsiCo Parties have adequately alleged intent to injure. Accordingly, the Court will deny Mr. Jennings's requested dismissal as to this claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Mr. Jennings's Motion to Dismiss. An appropriate Order follows.

S/Gene E.K. Pratter<br>
GENE E.K. PRATTER<br>
UNITED STATES DISTRICT JUDGE